Next case is Jenkins v. Road Scholar Transportation. Good morning, this is Richley Brown speaking. I represent Tayvon Jenkins and his kids on consortium claims as plaintiffs. We are up here on appeal because the district court in the first instance dismissed two counts which alleged reckless and statutory violations of both the Connecticut statutes on operation of vehicles as well as the motor carrier regulations which are on top of the Connecticut regulations. The district court in the first instance dismissed the first and second counts and then later on in the proceedings rendered a motion for summary judgment in favor of the defendants. My client was proceeding on Route 95, controlled access highway, and he under rode the defendant's tractor trailer which was parked on the shoulder of I-95. We alleged in great detail in paragraphs 8 through 11 of our complaint the various theories of what operation was and which regulations were violated and how the defendant has well intentionally parked his vehicle right in the traveled way immediately in front of a no parking sign and thereby caused the collision. My client's vehicle was traveling in the same direction as the tractor trailer the defendant's vehicle was facing and he under rode that vehicle. An examination of the record will show that there's an open question whether there was ice, whether there was drinking. As a cause, my client was in the legal intoxication range, so there was an alcohol involvement, but the expert witness took the police report which dissected the collision into two events. One event was the first point of impact where my client went off onto the shoulder of the road, and then there was a second point of impact several seconds later, which was separate and apart from the first. The first point of impact was on my client, and what happened when he hit the side of the road was he ran into a snowbank. And it- Well, could you address how the district court erred in granting the motion for summary judgment on the theory that comparative negligence barred your client's claim? What was the error that the district court made? The district court ignored some evidence and construed evidence in a manner which was not- the standard being is supposed to be construed in a manner most favorable to my client. And the point one, first point of impact and second point of impact analysis and my expert's opinion regarding- and the law regarding errant vehicles was ignored by the district court. The district court- Something that happened here was in the motion to dismiss on counts one and two, I've got a plenary review, and I also have a plenary review on the motion for summary judgment. However, the court didn't indulge any of the facts that my expert put forth. My expert explained in detail in this record that- I'm sorry, those bells are not coming for me. I get a little distracting. I don't think that's something that's coming for me. The chiming? Well, I think we can just ignore it. Let me ask again, because I mean, as I understand the district court's holding, its analysis is under Connecticut law, contributory negligence can be a question of law when the conduct of a person like your client is so manifestly contrary to that of a reasonably prudent person that the jury can reach but one conclusion on the comparative negligence of the two parties. And so it was your client's drinking that it was at the heart of the summary judgment assessment. So given the toxicology report, the expert report in the record and the surrounding circumstances, how did the court err on that? What evidence did it miss with regard to comparative negligence? It just didn't miss it. It was very apparent on the record. I think it was affected by the alcohol involvement. Alcohol was only one of the factors that could have led to my client's vehicle hitting the apron where the snow was, where it had first point of impact. The expert explained errant vehicles and an errant vehicle is a vehicle that whether it's alcohol, sleep, ice, a variety of being pushed off the road, there are a variety of circumstances where a vehicle can become an errant vehicle. It's the first point of impact, Mr. Jenkins became an errant vehicle. And what happened to the first point of impact? The ice shelf directed his vehicle straight down the road exactly like the highways are designed to funnel all traffic once they become errant vehicles. You may have noticed over the years, I-95 has removed virtually all obstructions from traffic lights and stanchions to all sorts of things so that there's nothing that leads to an abrupt stoppage. And that's what causes the damage. By parking his vehicle, and by the way, after the motion to dismiss was decided, we conducted discovery and we found that there was a GPS log showing that my client claim that Caswell was reckless was sustained because under the Jim Boston case that the judge referenced but didn't observe, there's a very broad description of how liberal the courts are in Connecticut in determining operation of vehicles. And that Jim Boston case was ignored by the court on the motion to dismiss. And- Well, Mr. Richard, I think let's get back to the comparative negligence, because I take it if the negligence claim fails, doesn't the recklessness claim fail a fortiori? Just give me a second on that, Your Honor. Yeah, I tend to agree with you. If it doesn't amount to negligence and the stricter standards of appeal and damages would not kick in. So if we can get back to the comparative negligence, I'm trying to understand your point. Are you saying that it's not a question of who did the worst thing? It's a question that goes to whose negligence  Is that the point you're making? Yeah, and that leads to a causation point. The causation being Caswell intentionally parking his vehicle without putting out any safety signs or triangles without emergency lights. He just parked that vehicle and he had his key in the- Oh, well, but if the, let's talk about the lights. Aren't the lights a red herring? I mean, if your driver is an errant vehicle, whether because of black ice or drunkenness or whatever, it wouldn't matter if the truck was lit up like a Christmas tree. If he's asleep or if he skids and is out of control, he's gonna hit the truck. The problem is where the truck is, it seems to me. And so what we're talking about is both things, at least assuming that Mr. Jenkins' drinking was responsible for his becoming out of control of the vehicle and hitting the side of the road and everything that follows, that his drunkenness is the cause. And if the truck weren't there, maybe he would have been injured or maybe he would have at some point again, hit the side of the road in a way that caused some damage, but it would certainly not have been as bad if the truck weren't there. And by the same token, if the truck was there, but Mr. Jenkins didn't lose control of the vehicle, the accident wouldn't have happened either, right? They're both contributing causes to the outcome. Agreed, but in two stages, because Jenkins' vehicle was proceeding parallel, coming to a stoppage on the highway. And it's not only a butt fork causation, but a superseding cause, there's a second point of impact. But he wouldn't have been there having a first impact if it hadn't been for his intoxication. In both cases, but whether you look at the Mr. Caswell's actions or Mr. Jenkins' actions, it's the fact that they each are in the wrong place where they don't belong that causes the disaster, yes? No, because once Jenkins becomes an errant vehicle, the highway is designed to bring him to a soft landing. The analysis is at pages 20 and 21. And then in my reply brief, he was deprived of- But if he weren't drunk, he wouldn't have been there and he wouldn't have hit the truck, yes? No, because there are several explanations for why he became an errant vehicle. And there is a distinction between coming into contact as a first point of impact. And at A190 of the record, you can see the photo of the abraded snow ledge where his vehicle was proceeding to a soft landing. It was the second point of impact when Caswell's reckless parking of his vehicle, which by the way, was on in the Connecticut law on operation and driving, is that if the keys in the ignition let alone turned on, and we have evidence in the record, his vehicle was on at the time, running while he was asleep with no safety provisions having been deployed. He was the cause of the second, the sole cause of the second point of impact when the errant vehicle underrode his truck. Mr. Brown, I think you've used your time and you haven't reserved any rebuttal. So we'll hear from your adversary. Thank you. Thank you. Thank you, Chief Judge Livingston. It may have pleased the court, Michael Kenney representing the defendant's appellees. The district court's decisions that are on appeal today were correct, and we respectfully request that this court affirm them. As the court knows, there are two separate decisions before this court. With respect to the motion to dismiss, I would just respectfully submit at the beginning that we do not feel the plaintiff has properly vested this court with jurisdiction over this appeal. The notice of appeal would be required under the standard 30-day timeframe under Rule 4A. This particular order does not fall into any of the exceptions to that jurisdictional requirement, and it was not filed until after the summary judgment motion was granted some 18 or 19 months later in the case. And even if this court found that it did have jurisdiction over that portion of the appeal, it's nonetheless manifestly clear that the district court's order was correct and should be affirmed. District court's decision granting the defendant's motion to dismiss was based upon the fundamental distinction that Connecticut jurisprudence draws between reckless and negligent conduct. That's spelled out in detail in the court's decision. It's spelled out in detail in our brief, Your Honors, I respectfully invite your attention to that distinction. And the seminal case that's usually cited for that is Dubé versus Irish. And what the court did in applying that particular distinction to the allegations that were set forth in the amended complaint was find that they did not come anywhere close to meeting the plausibility standard under Ashcroft and Twombly. The court drilled down to the basic factual allegations were that the, you know, once you set aside all the conclusions that are not entitled to any deference, the facts that were alleged was that Mr. Cantwell parked on the shoulder, didn't activate his hazards, and didn't put out any warning devices, which would not come close to what's required for alleging reckless conduct. We also respectfully submit that the court's decision granting the defendant's motion for summary judgment was proper and should be affirmed. The court, we brought up three different bases for summary judgment when we filed the motion, Your Honors, and that was with respect to the comparative negligence argument, that we did not owe the plaintiff under these facts a duty, or that the plaintiff couldn't meet, even if there were a duty and it were breached, the plaintiff could not meet the required element of causation. And in all candor, the district court could have granted the defendant's motion on any of those three theories. The court based its decision on the comparative negligence arguments and did not address proximate cause or legal duty, but we respectfully submit that the decision could have been rendered on all three of those grounds. What we have here, Your Honors, is one of these situations which this court has acknowledged exists in negligence cases, certain types of negligence cases, where the evidence is so overwhelmingly in favor of the moving party that even questions of negligence can and should be resolved as a matter of law. The district court, we respectfully submit, was correct in finding that this case was such a case. The evidence here was so overwhelmingly one-sided in favor of the defendants. There's no genuine issue of material fact that was established by the plaintiff in support of his claims. And the district court correctly pointed out not only did the record not corroborate the plaintiff's testimony as to how this accident occurred, but every other portion of the record directly contradicted the plaintiff's version of events. And this goes to the point that's been brought up by this court in numerous cases, Jeffries v. City of New York, a decision offered by Judge Cabranes, I believe in 2005, is often cited for this, that a party cannot, their own uncorroborated or unsubstantiated evidence, create a genuine issue of material fact. And that's what happened here. That's what the plaintiffs are attempting to do here, and the court correctly found that they were not successful. Every item of evidence, from the plaintiff's own statements to the state trooper at the scene that he fell asleep at the wheel, he also referenced to hospital personnel that he must have lost consciousness. The trooper made independent observations that the plaintiff reeked of alcohol. The plaintiff mentioned to hospital personnel that he had seven drinks, and those are just the plaintiff's own statements to personnel at the scene and the hospital, and also the observations of the trooper we also have the unrebutted report of our toxicology expert, Dr. McKay, that is of the opinion, when you reverse extrapolate, given how much time elapsed between the accident, the extraction, and when the testing of the plaintiff's blood was done at the hospital, when you reverse extrapolate from that time back to when the plaintiff was actually drinking, that it probably took upwards of 13 drinks, not three, as claimed by the plaintiff, but 13 to achieve the 0.093 that was measured several hours after the accident when blood was drawn at the hospital. And so we again have unrebutted evidence from an expert that directly contradicts the plaintiff's claims. Likewise, the defendants disclosed and included for the court's consideration on summary judgment a report of a weather expert who stated that it is highly likely based upon the atmosphere conditions, the weather that existed at the time, that the travel lanes would have been ice-free at the time of this accident. And also in that regard, your honors, we did secure an affidavit from Deputy Chief Keith Mallette, he's with the Costco Fire Department, that he didn't have any problems with ice. And he actually, along with Trooper Farris, who responded to the scene, those gentlemen actually had to, you're probably familiar, your honors, with Blue Match 5 in this location. Both of those individuals had to drive south past the accident site, exit the highway, and come back on past the very way station that the plaintiff passed, and neither Trooper Farris nor Deputy Chief Mallette stated that they had any problems with ice whatsoever. And so those are just some of the items of evidence that directly contradict, that the district court found directly contradicted the plaintiff's testimony concerning how this accident unfolded. The plaintiff brought up the issue of errant vehicles with respect to the oral argument this morning. There's no case anywhere that states that the errant vehicle doctrine, which is utilized for design of highways and things like that, there's no case anywhere that says that that doctrine alters the standard of care or any legal analysis of what standard of care is owed by one operator to another. That argument, your honors, we respectfully submit is misplaced. In this particular case, even if the district court looked at the issue of proximate cause, for example, instead of comparative negligence, the plaintiff still would not be able to prevail. And this is one of those rare circumstances, your honor, that I respectfully submit, where you can't even create a genuine issue of material fact as to cause in fact. And so, for example, Mr. Caswell testified that this particular location is frequently used by tractor trailers when they park on the side of the highway when they're trying to get rest. He described how he went into the weigh station looking for a parking spot. They were all full, so he parked on the shoulder. And during the course of the time he was there, there were other trucks there. And so even if Mr. Jenkins, when he fell asleep at the wheel due to being inebriated, drifted across the travel lanes, across the acceleration lane and into the shoulder, even if the Caswell vehicle weren't there, it's complete speculation, even if the plaintiff's expert agreed on this, to say that he would not have collided into a tractor trailer that might've been in front of the Caswell vehicle, or does he rebound off the ice and go back into the road where he strikes another passenger vehicle or a retaining wall, something like that. It's speculation, which is not permitted in terms of determining whether or not cause in fact can be satisfied, let alone proximate cause. Here, we respectfully submit that even if Mr. Caswell's action in parking where he did could be found to be negligent, the overwhelming negligence on the part of Mr. Jenkins severed any causal connection between Mr. Caswell's negligence and the accident itself. Our truck being there was simply a condition, not a proximate cause. Thank you, your honors. Thank you, Mr. Kinney. We'll take the matter under advisement. Thank you both for your arguments. Thank you.